UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
UNITED STATES OF AMERICA,     )
                              )
            Plaintiff,        )
                              )
      v.                      )    Civil Action No. 12-1736 (PLF)
                              )
SUM OF THREE HUNDRED NINE     )
MILLION FIVE HUNDRED THOUSAND )
DOLLARS,                      )
                              )
            Defendant.        )
_____)

OPINION AND ORDER

The United States, proceeding as the plaintiff in this civil forfeiture action, has filed a motion to strike the verified claim and answer of claimants Richard L. Stethem (individually and in his capacity as Administrator of the Estate of Robert Stethem), Patricia Stethem, Sheryl Sierralta, Kenneth Stethem, and Patrick Stethem (collectively, the "Stethem Claimants" or the "Stethems") for lack of standing. Upon consideration of the parties' arguments, the relevant legal authorities, and the entire record in this case, the Court concludes that the Stethem Claimants lack standing to challenge the forfeiture and that their claims for remission or mitigation are nonjusticiable. The motion to strike therefore will be granted.[1]

---

[1] The papers reviewed in connection with the pending motion include: the United States' Verified Complaint for Forfeiture *In Rem* ("Compl.") [Dkt. No. 1]; Answer to the Complaint by the Stethem Claimants ("Stethem Ans.") [Dkt. No. 5]; Verified Claim of the Stethem Claimants ("Stethem Cl.") [Dkt. No. 7]; the United States' Motion to Strike Verified Claim and Answer [Dkt. No. 11] and the memorandum in support thereof ("U.S. Mot.") [Dkt. No. 11-1]; the Stethem Claimants' Declaration and Memorandum in Opposition to the United States' Motion to Strike Verified Claim and Answer ("Stethem Opp.") [Dkt. No. 13]; and the United States' Reply ("U.S. Reply") [Dkt. No. 16].

# I. BACKGROUND

## A. *Nature of the Forfeiture Action*

The United States initiated this litigation to seek the forfeiture of more than $300 million from ING Bank, N.V. ("ING"). See Compl. ¶ 2. According to the United States, from the early 1990s until 2007, ING unlawfully facilitated United States currency transactions for Iranian and Cuban customers who were subject to U.S. sanctions. Id. ¶¶ 5-6. In June 2012, ING wired the defendant funds to the Internal Revenue Service pursuant to a Deferred Prosecution Agreement entered into between ING and the government. Id. The United States contends that the defendant funds are substitute property for ING funds of at least $619 million used to promote a conspiracy to violate the Trading With the Enemy Act, 50 U.S.C. app. §§ 1-4, the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1706, and the regulations promulgated under each Act, thus violating 18 U.S.C. § 1956(a)(2), which proscribes, *inter alia*, "transferr[ing funds] . . . to a place in the United States from or through a place outside the United States with the intent to promote" unlawful activity. Compl. ¶¶ 11, 14-15, 18-19.

## B. *Allegations of the Stethem Claimants' Claim and Answer*

The Stethems have filed a claim in this action asserting a purported interest in a portion of the defendant funds. See Stethem Cl. at 1. The full narrative of the tragic events underlying the Stethem Claimants' asserted interest in this case can be found in Stethem v. Islamic Republic of Iran, 201 F. Supp. 2d 78 (D.D.C. 2002). On Friday, June 14, 1985, armed hijackers took control of TransWorld Airlines Flight No. 847, departing Athens, Greece. Id. at 80. Among the 143 passengers on board were U.S. citizens and servicemen Robert Stethem, Kurt Carlson, Stuart Dahl, Jeffery Ingalls, Clinton Suggs, Tony Watson, and Kenneth Bowen, en route back to the United States from various assignments abroad. Id. The hijackers retained

control of the flight for sixteen hours, during which time several of these servicemen were brutally beaten.  Id.  Robert Stethem, a 23-year-old Navy petty officer, was executed by gunshot to the head and shoved from the plane onto the tarmac at the Beirut, Lebanon airport.  Id. at 80-81.  The surviving servicemen were held captive in Beirut until June 30, 1985.  Id. at 80.

The servicemen, their spouses, and the family of Robert Stethem later brought suit against the Islamic Republic of Iran and its Ministry of Information and Security under the terrorism exception to the Foreign Sovereign Immunities Act.  See Stethem v. Islamic Republic of Iran, 201 F. Supp. 2d at 80-81, 85-86.  A judgment for compensatory damages and $300 million in punitive damages was entered in April 2002 against the Iranian Ministry of Information and Security for its role in providing support and resources to Hizballah and Amal, the terrorist organizations responsible for the hijacking and murder.  Id. at 92-93.  To date, no portion of this judgment has been paid to the Stethem Claimants.  Stethem Cl. ¶¶ 39-40.

Once the Stethem Claimants learned of the transfer of the defendant funds from ING to the Internal Revenue Service — and before the commencement of the instant forfeiture action — they sought to assert their interest in the defendant funds in two ways.  First, the Stethem Claimants filed a petition for remission or mitigation with both the IRS and the Department of Justice.  See Stethem Cl. ¶¶ 20-25; Petition for Remission or Mitigation [Dkt. No. 7-5].[2]  The Stethem Claimants assert that although their petition complied with the applicable regulations, it was never investigated, adjudicated, or resolved administratively.  Stethem Cl. ¶¶ 1-4; Stethem Ans. ¶¶ 21-23.  Second, the Stethem Claimants obtained a writ of execution from the United States District Court for the District of Maryland and served the writ

---

[2]   Remission and mitigation are administrative remedies governed by regulations located at 28 C.F.R. §§ 9.1-9.9, and administered by the Department of Justice.

upon the IRS at its office located in Landover, Maryland.  Stethem Cl. ¶¶ 15-17.  But the Stethem Claimants later withdrew the writ, after two Assistant U.S. Attorneys advised them that the writ violated the United States' sovereign immunity.  Id. ¶¶ 18-19.

After the United States had initiated this forfeiture proceeding, the Stethem Claimants filed their answer and their verified claim.  They allege that some portion of the defendant funds "belong to the Islamic Republic of Iran, its national bank, and other public and governmental concerns of the Islamic Republic of Iran," Stethem Cl. ¶ 10, and that the Stethem Claimants are "innocent owners" of the defendant property within the meaning of 18 U.S.C. § 983(d).  Id. ¶ 30.  The Stethem Claimants also assert a claim for "remission" based upon their status as judgment creditors of the Iranian Ministry of Information and Security.  Id. ¶ 7 (citing 28 C.F.R. §§ 9.1-9.9); see id. ¶¶ 5-30.  In the alternative, the Stethem Claimants assert a claim of "mitigation," based upon the tragic death of Robert Stethem, id. ¶¶ 31-48; the Stethem Claimants maintain that, absent collection in cases such as this one, there are no means by which they can collect their award of unpaid punitive damages, rendering the judgment "wholly frustrated" and "meaningless."  Id. ¶¶ 43-44.

## II.  LEGAL STANDARD

In a forfeiture action brought *in rem* pursuant to a federal statute, at any time before trial the United States "may move to strike a claim or answer . . . because the claimant lacks standing."  SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS (hereinafter SUPP. R.) G(8)(c)(i)(B).  Such a challenge to a party's claim and answer "may be presented as a motion for judgment on the pleadings."  Id. G(8)(c)(ii)(B).[3]

---

[3] The United States' motion is labeled a motion to strike, but the government invokes the legal standard governing motions for judgment on the pleadings pursuant to Rule

A motion for judgment on the pleadings may be brought following the close of pleadings. FED. R. CIV. P. 12(c). Such a motion is functionally identical to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 130 (D.C. Cir. 2012); see also Lockhart v. Coastal Int'l Sec., Inc., 905 F. Supp. 2d 105, 114 (D.D.C. 2012) (noting that "courts employ the same standard [to evaluate Rule 12(c) motions] that governs a Rule 12(b)(6) motion to dismiss"). A Rule 12(c) motion for judgment on the pleadings therefore is also analyzed for compliance with the Supreme Court's holdings in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). See, e.g., Rollins v. Wackenhut Servs., Inc., 703 F.3d at 129-30; Lockhart v. Coastal Int'l Sec., Inc., 905 F. Supp. 2d at 114. In performing that analysis, a court must "accept as true all of the factual allegations contained in the [pleading]," Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (quoting Swiekiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)), as well as all reasonable inferences stemming from those factual allegations. See Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014) ("The court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor . . . ."). To survive a motion for judgment on the pleadings, a pleading need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

---

12(c) of the Federal Rules of Civil Procedure. See U.S. Mot. at 6-7. The Court agrees that this is the appropriate standard to apply in the present posture of this case.

III.  DISCUSSION

*A.  Article III Standing*

The United States contends that the Stethem Claimants lack Article III standing to assert any claim to the defendant funds.  More specifically, the government argues that even accepting as true all of the factual allegations set forth in the Stethem Claimants' verified claim and answer, they have no "colorable interest" in the defendant funds and therefore lack standing.  U.S. Mot. at 7-22; U.S. Reply at 2-8.

In order to contest the forfeiture of property to the federal government in an *in rem* forfeiture proceeding, a claimant must "assert[] an interest" in "specific property" that is named as a defendant.  SUPP. R. G(5)(a)(i)(A); see 18 U.S.C. § 983(a)(4)(A) ("[A]ny person claiming an interest in the seized property may file a claim asserting such person's interest in the property . . . .").  "A claimant who lacks such an interest has no standing to challenge the forfeiture."  United States v. All Assets Held at Bank Julius Baer & Co., 959 F. Supp. 2d 81, 95 (D.D.C. 2013) (citing SUPP. R. G(8)(c)(i)(B)).  "Establishing standing requires only that the claimant demonstrate 'a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake.'"  Id. (quoting United States v. Real Property Located at 475 Martin Lane, 545 F.3d 1134, 1140 (9th Cir. 2008)).  The nature of a claimant's asserted property interest is "defined by the law of the State in which the interest arose."  United States v. One Lincoln Navigator, 328 F.3d 1011, 1013 (8th Cir. 2003).  "But while state law defines a claimant's interest in specific property, 'federal law determines the effect of [that] ownership interest on [the claimant's] right to bring a claim.'"  United States v. All Assets Held at Bank Julius Baer & Co., 959 F. Supp. 2d at 96 (quoting United States v. U.S. Currency, $81,000.00, 189 F.3d 28, 33 (1st Cir. 1999)) (alterations in original).

6

The Stethem Claimants assert an interest in the defendant funds based on their 2002 judgment against Iran's Ministry of Information and Security, awarded in this Court.  But as the United States emphasizes in its motion to strike the Stethems' claim, federal courts "have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property."  United States v. All Assets Held at Bank Julius Baer & Co., 772 F. Supp. 2d 191, 198 (D.D.C. 2011) (quoting United States v. One–Sixth Share, 326 F.3d 36, 41 (1st Cir. 2003)).  Rather, in order for a judgment creditor to stake a colorable interest in defendant property, the creditor must have a perfected lien against that specific property.  See United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d 1185, 1191-92 (D.C. Cir. 1995).

Whether the Stethem Claimants hold such a perfected security interest in the defendant funds is determined by state law.  See United States v. All Assets Held at Bank Julius Baer & Co., 772 F. Supp. 2d at 199.  The United States asserts — and the Stethem Claimants do not contest — that District of Columbia law applies here.  Under the law of the District of Columbia, "[i]n order to reach personal property of a debtor held by a third party, a judgment creditor must — following entry of judgment — request the court to issue a writ of attachment."  Consumers United Ins. Co. v. Smith, 644 A.2d 1328, 1351 (D.C. 1994) (citing D.C. CODE § 16-542)).  "Once the third-party holding the targeted property — the garnishee — is served with the writ, the judgment creditor has 'a valid lien . . . on the debtor's property held by the garnishee.'"  United States v. All Assets Held at Bank Julius Baer & Co., 772 F. Supp. 2d at 203 (quoting Consumers United Ins. Co. v. Smith, 644 A.2d at 1352) (omission in original).  "That lien is not final, however.  In order to obtain the attached property, the judgment creditor must, after serving the writ of attachment, move for the entry of judgment against the garnishee."  Id. (citing D.C. CODE § 16-556).

It is undisputed that the Stethem Claimants did not complete the set of procedures required to perfect a lien against the defendant funds. To be sure, the Stethems did apply for a writ of execution from the United States District Court for the District of Maryland, and the writ was issued by the Clerk of the Court and served upon the Internal Revenue Service at its office in Landover, Maryland. See Writ of Execution [Dkt. No. 7-2]; Stethem Opp. at 20. This writ subsequently was withdrawn by the Stethem Claimants, however, and no motion for the entry of judgment ever was filed.

The Stethems argue that they withdrew the writ of execution only because two Assistant United States Attorneys contacted claimants' counsel and informed him that the writ was "illegal" and that the United States intended to file a motion to vacate the writ. Stethem Opp. at 21. In addition, counsel for the Stethems contends that the government lawyers threatened to seek sanctions against him, and urged him to withdraw the writ in order to "bypass paperwork." Id. According to the Stethems' counsel, the government attorneys promised that if the writ were withdrawn, the Stethems "would be entitled to adjudicate their Claim to the subject funds, on the merits, in a forfeiture proceeding." Id. The Stethem Claimants argue that it would be inequitable to accept the government's present argument — that the Stethems failed to perfect a lien against the defendant property, and therefore have no colorable interest in that property — given that it was only in reliance on the representations of government counsel that the Stethems withdrew the writ they had served upon the IRS. See id. at 21-25. And they further argue that the government should be deemed to be holding the defendant property in constructive trust for the Stethem Claimants, providing them with standing to assert their claim. See id. at 24-25.[4]

---

[4] Although the Court concludes that the Stethem Claimants' estoppel-type argument must be rejected for the reasons stated below, it also bears observing that, as this Court previously has explained with respect to the doctrine of constructive trust, the D.C. Circuit "does

The United States disputes many of the assertions made by the Stethem Claimants regarding the communications among counsel. The United States does not, however, dispute counsel's statement that he was urged to withdraw the writ of execution because, according to the Assistant U.S. Attorneys, the service of such a writ violated the sovereign immunity of the United States. See Stethem Cl. ¶ 18; Stethem Opp. at 21. The United States, in its motion to strike the Stethems' claim, cites legal authority to support the accuracy of that representation. See U.S. Mot. at 16 n.5, 18-19 (citing, *inter alia*, Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 264 (1999)); see also U.S. Reply at 9-10. While the Stethem Claimants suggest that counsel for the United States misled them into foregoing the opportunity to perfect a lien against the defendant funds, they fail to address whether the Maryland writ was, in fact, destined to futility due to the United States' assertion of sovereign immunity. Unfortunately for the Stethem Claimants, it most certainly was. See Dep't of the Army v. Blue Fox, Inc., 525 U.S. at 264 ("[S]overeign immunity bars creditors from attaching or garnishing funds in the Treasury . . . ."). Moreover, counsel for the Stethem Claimants was under no compulsion to accept the assertions made by the government's lawyers regarding the validity of the United States' sovereign immunity defense.

Because the Stethem Claimants' judgment against Iran's Ministry of Information and Security makes them only general unsecured creditors of Iran, and as the Stethems do not possess a perfected security interest in the defendant property, the Court must agree with the

---

not subscribe to this theory of standing in forfeiture cases." United States v. All Assets Held at Bank Julius Baer & Co., 772 F. Supp. 2d at 200 (citing United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d 1185 (D.C. Cir. 1995)).

government that the Claimants lack Article III standing to assert a claim to the funds in this case.[5]

### B. *Claims for Remission and Mitigation*

The Stethem Claimants also assert a claim for "remission" and a claim for "mitigation." As noted supra at 3 n.2, remission and mitigation are administrative remedies that fall within the purview of the Department of Justice. The Stethem Claimants offer no support for the view that these claims are justiciable in a federal court. See U.S. Reply at 12 (noting that the Stethems did not respond to the government's arguments on this point). The Court therefore will not consider these claims. Upon resolution of this forfeiture action, the Stethem Claimants may have the opportunity to pursue their administrative remedies with the Department of Justice. See Letter from Tim Virtue, Deputy Chief, Asset Forfeiture and Money Laundering Section, U.S. Department of Justice, to Evan Van Leer-Greenberg, Esq. (Sept. 26, 2012) [Dkt. No. 7-6] (stating that "[t]he petition for remission that you submitted has been placed on file," and "[if] and when the seized funds are judicially forfeited, [we] will reopen the petition and render a decision").

---

[5] The United States advances a separate challenge to the Stethems' claim based on a purported lack of "prudential standing," on the ground that the Stethems are not "owners" of the defendant property within the meaning of 18 U.S.C. § 983(d). U.S. Mot. at 22-24. It is doubtful whether such a characterization of the argument remains accurate. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386-87 & nn.3-4 (2014) (casting doubt on validity of prudential standing doctrine). Nonetheless, however characterized, the Court agrees that the Stethem Claimants lack an ownership interest in the defendant funds, for the same reasons explained in the main text above.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the United States' motion [Dkt. No. 11] to strike the Stethem Claimants' Verified Claim and Answer is GRANTED; and it is

FURTHER ORDERED that the Stethem Claimants are DISMISSED from this litigation.

SO ORDERED.

DATE:  March 27, 2015

/s/_____
PAUL L. FRIEDMAN
United States District Judge